STATE OF MISSOURI, Respondent, v. WALTER CLEIN et al., Appellants.

Springfield Court of Appeals, April 3, 1911.

1. **CRIMINAL LAW: Gaming: Sufficiency of Evidence.** In a criminal prosecution in which defendants were charged with playing a game of poker for money, the state's case, as made by the testimony of the four officers who arrested defendants, showed that the witnesses raided the place where the defendants were found in a room; in which was a table, upon which four hands of cards had been dealt, and by each hand was a stack of chips. When the officers entered the room, defendants were rapidly moving out, and one of them was found in a bed with his clothes on. But there was no evidence that defendants had been playing poker, nor was there any evidence that defendants had bought any chips, or that the chips represented money, and no money was found in the room. *Held*, that the evidence was not sufficient to uphold a verdict of conviction.

2. ———: ———: **Burden on State.** In prosecutions for gaming the state must show that the defendants bet money or some other thing of value, and this must be proved beyond a reasonable doubt.

3. **CIRCUMSTANTIAL EVIDENCE: Criminal Law.** While it is competent to prove an offense by circumstantial evidence, such evidence must go beyond mere suspicion and conjecture, as the presumption of innocence is not to be overcome, even by strong suspicion.

4. **EVIDENCE: Criminal Law: Gaming: Reputation of House.** In a prosecution for gambling it is not competent to show the reputation of the house.

Appeal from Greene Circuit Court.—*Hon. John T. Moore*, Special Judge.

REVERSED.

*Patterson & Patterson* for appellants.

(1)   The court erred in admitting testimony to the effect that the place where defendants were arrested

was commonly called a gambling house. It is not admissible to prove the character of a house by general reputation, or common rumor. Kelley's Criminal Law (2 Ed.), 956; 6 Ency. of Evidence, 199; Wharton on Criminal Evidence, (9 Ed.), secs. 260 and 261; Loehner v. Ins. Co., 17 Mo. 258; In re Imboden, 128 Mo. App. 573. (2) It was highly improper and prejudicial to the rights of defendants for the court to permit the state to prove by the witness Walsh that checks such as were found in the place where defendants were arrested usually represented money. It was not a question of what the checks usually represented, but what they represented, if anything, at the particular time the defendants were charged with having played poker for money. State v. Brooks, 94 Mo. App. 57. (3) In a prosecution for gambling the state must show that defendants bet money or some other thing of value. And this must be proved beyond a reasonable doubt. 6 Ency. of Evidence, 190.

*J. C. West,* Prosecuting Attorney, for respondent.

NIXON, P. J.—Appellants were tried and convicted upon an information charging them with having played a game of poker for money and property and have appealed. The evidence consists of the testimony of the four officers who made the arrests and tended to show that on the afternoon of August 15, 1910, the officers went to a room over the Frisco Barber Shop on Commercial street in the city of Springfield; that two of the officers went up the front stairway and two went up the back stairway; that officer Walsh pressed an electric button at the front door and was asked by a man inside, "Who is there?" Walsh answered, "A friend." The question was repeated, and the same reply made, whereupon the door was opened slightly and Walsh placed his club in the opening so the door could

not be closed and the two officers pushed on the door and gained about six inches and finally threatened to shoot if the door was not opened. That as soon as the door was first opened, the man who opened it said, "Hey!" in a very low tone and when he let the door be opened said, "Run boys, run!" and the five men inside ran toward the back door which they unlocked and opened and were confronted by the two officers waiting there. Clein was found hiding behind something and Rush was in bed—with all his clothes on.

Officer Walsh testified that in the front room from which the defendants fled was found a large round table covered with gray cloth something like a blanket; that five hands of cards were dealt around the table and that "he would take it to be a poker game"; that by each hand was a stack of poker chips or checks, except one hand which was pushed to the center of the table and the chips with it. None of the witnesses saw the defendants actually engaged in the game. When the officers entered the room the defendants were rapidly moving out. No one saw any of the defendants buy any chips or cash any chips. No money was found in the room though a thorough search was made. Whether defendants had any money in their clothes does not appear. A box was found in the room near the table, containing chips of different colors, but no money or other thing of value. The evidence tended to show that some one ran down the front stairs just as the officers entered the room. Upon this testimony the defendants were each found guilty and each fined $75.

The witnesses for the state saw no playing of cards, and saw no one buy chips, and could not tell of their own knowledge what kind of a game defendants had been playing, or whether defendants had been playing; they saw no one cash in any chips, and did not know of their own knowledge whether the chips represented money.

During the trial the state was permitted to prove by its witness, Officer Walsh, over defendants' objection,

that the reputation of the house in which the defendants were arrested was that of a gambling house and that "he had been through there before." While it was competent for the state to show the surroundings of the room, its furnishings and paraphernalia, if any, and the manner in which the rooms were constructed, in order to show that it was a gambling house in fact, it was not competent to show the reputation of the house and error was committed in allowing the evidence to be introduced.

In many of its features, this case resembles that of State v. Brooks, 94 Mo. App. 57, 67 S. W. 942, and to some extent, the case of St. Louis v. Sullivan, 8 Mo. App. 455. In the former case it was held that the evidence was insufficient to support the verdict.

A review of the evidence in this case shows wide gaps and fails to make a prima facie case for the state. There was no evidence that any money was found or seen, and no evidence that there was any playing for money or chips or property. There was no evidence that the chips that were found had been played off with the understanding that they represented money; nor was there any evidence that there was a keeper of the house, or the table, or that the chips had been sold to the defendants. The evidence, so far as it goes, is as consistent with the hypothesis that the defendants were preparing to engage in a game as that they had already engaged in a game; and there was no evidence that they had played at a game of cards. And no matter how extensive or how elaborate the preparations to engage in gaming, no crime was committed until they had actually bet money or other thing of value on a gambling device. In prosecutions for gaming, the state must show that the defendants bet money or some other thing of value and this must be proved beyond a reasonable doubt. [6 Ency. of Evi. 190.] And while it is competent to prove an offense by circumstantial evidence,

154 App.—44

such evidence must go beyond mere suspicion and conjecture as the presumption of innocence is not to be overcome even by strong suspicion. [State v. Crabtree, 170 Mo. 642, 71 S. W. 127.] However anxious courts may be to enforce the law and stamp out crimes against morality that cast a deadly blight on industry, the right of a defendant in a criminal case to a trial according to the forms of law cannot be denied. In the absence of substantial proof upon which to rest the verdict, we have but one duty. The judgment is accordingly reversed. All concur.